May it please the Court, good morning. Michael Helfinger, a Foley and Lardner for Appellants to Marshall Naify Revocable Trust, its trustee Michael Naify, as successors to the estate of Marshall Naify. Shapiro v. The United States, a case decided while this case was in briefing, requires that this estate tax refund case be reversed and remanded with instructions to determine the estimated value of California's income tax claim against Marshall Naify as of the date of his death. The issue on appeal is a valuation issue, whether the district court erred in dismissing on the pleading without affording an opportunity to prove the estimated date of death value of the deductible claim. The government does not contest the existence of California's income tax claim arising out of Mr. Naify's taxable activities in 1999 when he died in April of 2000. Shapiro instructs that Treasury Regulation 2053-1B3 requires the estate to value the claim as of the date of death, even if there is uncertainty about the amount. Lacking the benefit of Shapiro, the district court ruled that the estate's claim to estimate the date of death value of Mr. Naify's tax liability was too uncertain as a matter of law. But if the palimony claim in Shapiro can be estimated, there can be no doubt that California's tax claim here also can be estimated. If Shapiro involved a factual issue for trial, so too here. Well, now, in this case, what you estimated was considerably higher than what you ultimately paid, correct? That's correct, Your Honor. Because I think you ultimately paid, what, $25 million? $19 million, and the difference is interest that was paid as a result of the $62 million claim being disallowed, only the $19 million being allowed. All right, so how, what is the financial disadvantage to the, you know, obviously the government, you know, that, you know, probably all of us being taxpayers, know that they usually like you to pay whatever you're going to pay before you get to say anything, you know, contest anything about it. And they seem to say that it was uncertain, and there's no way to know whether it would ever be paid. What, you know, what's the disadvantage to the government when, like, you would have asked, if you had been allowed to do, it was what, $62 million or whatever is what you were estimating at the time? That was the amount of the claim. We're now, we're now claiming that, yeah. Right, for the refund. Yeah, for the, right. But if you had been allowed to do that, how would have, how would the results have been different? And what, what would have been the downside to the government or the, or the upside to you? Do you mean as a matter of? Had you been allowed to do initially what you wanted to do? Do you mean as a matter of calculation, Your Honor? Yeah. Okay. Okay, so if we had been allowed the deduction that we now see, which is 67% of the $62 million California claim, there would have been a $41 million deduction. The tax rate at that time was 55%, so it is about a $20 million benefit. And then we were allowed 19 by the government, and so it's a difference of about $10 or $11 million. All right. But the fact that they, that they said it was uncertain, the amount that you actually paid was a lot different than what you were estimating. So does, can we say, well, not only was it uncertain, it was wrong? No, Your Honor, because the time to do the estimate, to do the valuation, is at the date of death. And the reason for that is because the tax is on the transfer of the estate at the time of death. And just as on the asset side, one estimates the value of the assets, so too one estimates the value of the liabilities in order to determine what is it, the amount of the estate that is being transferred. So just as there were assets that were estimated in 2004 or calculated what the value was in, sorry, as of the date of death in 2000, so too the liabilities. So just as it would be, you know, it would make no sense and be unfair to the taxpayer to saddle them with assets valued in 2000 and liabilities valued later. Indeed, in this case, you know, certain assets, given what happened to markets, you know, assets were worth much less in 2004 at the time of this settlement. So in order to put parity and in order to put fairness in the concept of what the tax is, the tax is on the transfer, that's why the valuation, to the extent possible, is done as of the date of death. So you had an expert that said what the estimate was, right? Correct, Your Honor. All right. So are you basically saying that the position that the government is saying that they're saying, I mean, unless it's actually paid and done, that they're going to always say that it's uncertain? That's how I understand their position, yes, Your Honor. Well, let me ask you a couple of questions. It seems to me that at least at one time, maybe when taken, there was a calculation of the potential tax, and then there was also an expert who came in and said, well, this is the chance it's going to succeed and this is the chance it isn't going to succeed, and therefore, one can make some calculation and be pretty easy, multiplying the chance of succession against what the tax is. But that would have happened at the first. Now we go to death. It seems to me that's what we've done is we've said at the time of death, all we have in front of us is that we have a method to avoid the tax and we have determined what chance there is of success. What else have we done at death? We don't know whether it's going to succeed or not. We don't know whether we're paying or not. In fact, we file a tax return suggesting this is exactly the way it ought to be, and we're saying that this device that a counsel told us all about was valid, not subject to dispute. So at the time of his death, I don't know how one can determine how much is going to be paid. The way to determine how much is going to be paid is by figuring out what the discount rate is on the chance of success of California's claim. It's the same issue that exists in Shapiro. When Mr. Shapiro died, the claimant there, Ms. We're not asking whether it might be paid. We're asking will it be paid. But there's, let me take a step back. The will it be paid language in the Treasury regulation really has to do with the claim. Is this a claim that will be paid? Is this an item, and the item is the claim, will it be paid? There is no plausible contest here that in fact the estate would have paid the claim regardless. Now, just a minute. It's my understanding they undertook the tax planning and the effort in order to shield from pay. Right. So will it be paid? We don't know. It depends on whether the shield works or not. Right. But that's true, Your Honor, in the case of any disputed claim. And this Court in Shapiro has firmly taken the position that disputed claims can be valued. So, too, in Shapiro, the Mr. Shapiro's estate was defending against the claim. Mr. Shapiro defended against the claim before he died. And the position was that it was not a valid claim under Nevada law, that there were no facts to support it, and that there was no amount, you know, the amount in contest couldn't be determined. And yet this Court said that the value of that claim is a factual issue that has to be determined by the district court. Well, I guess my worry about this, the district court said, is the claim's existence certain? Well, he wasn't sure. Although an estimate could be surmised that if the claim is too uncertain, then it fails. He says it fails to be ascertainable with reasonable certainty. I'm coming at it in a different way. Rather than looking at fails for ascertainable with reasonable certainty, I'm saying that's part of the reason, but it's got to be paid, will be paid. And I'm still having a tough time understanding how I can say it will be paid. We can have a lot of determination about might be paid, but we can't find anything that says it will be paid, which is what the regulations suggest. Right. I would like to reserve two minutes, if possible. But, Judge ---- Well, you don't have two minutes. So, finish answering Judge Smith's question, and your time is basically up now. I'll give you one minute for rebuttal. Judge, as I said, the estimate of a disputed claim, there's always going to be the probability, the fact that it's disputed raises the possibility that it won't be claimed, won't be paid. And so that any value, because that's what is said to be disputed, at least as to liability, and liability was disputed in Shapiro. And so to the extent liability is disputed, there's a defense that says I don't have to pay this at all. And so in order to value that claim, it has to take into account the chance that it won't be paid. The idea of a claim that won't be paid for purposes of the Treasury regulation is to block collusive claims. And claims basically that are designed to reduce the taxable amount of the estate in a way that are never actually intended to go against the estate and get a payment of a claim. So this is not a collusive claim. It was clear that California would pursue this claim. The question was whether or not the dispute had a valid defense. But the claim would be paid if, in fact, it turned out that that defense failed or that it was resolved in another way, as we now know actually happened in the world. Thank you. Okay. Thank you. I'll give you a minute for rebuttal. Good morning. Good morning, Your Honors. My name – may it please the Court. My name is Jennifer Rubin, and I represent the government in this case. And we submit that Judge Smith, in his questioning of my opponent, really put forward the correct reading of the regulation. Do you look at the date of death, and you see at that point in time whether it is ascertainable with reasonable certainty what amount will be paid on the particular claim? Well, the mere fact that someone wants to dispute something, that can't mean in every instance that it won't be paid, right? I mean, if someone has the audacity to dispute the government, does that, therefore, end your inquiry? If it was, say, a frivolous dispute or if it was a dispute that, you know, really there was no really valid defense, such as in Propstra. In Propstra, what this Court did was – But I'm talking about if just because someone disputes something, does that mean they will never – it will never – they can never satisfy that they will be paid? I don't think it can – I don't think it can go that far. I don't know that it would go that far, Your Honor. I mean, certainly this case – Well, it seems like maybe you were thinking about giving me that answer until I gave you a little clue. Right. You know, basically this case comes so far from reaching that point that it doesn't really tell us what the outer bounds of the regulation is because it is undisputed based on the facts in this complaint, including the incorporated administrative tax refund claim, that there was such a substantial chance. So does it just depend on how much they dispute the government? It probably depends on just how good the defenses are, just how strong the defenses are. Well, obviously, they've had to pay less than what they said they were going to have to pay, so. That's right. And as – and that's something that is actually – And then they paid it, right? They did pay the amount that they settled for. And that was the point at which the post-death relief provided by the regulation kicked in. Remember, the government's reading is the only one that makes sense of the entire regulation, which includes both an ascertainability standard at the date of death. Well, except – what about, though, this is at the – you know, I recognize why the government gets to hold a lot of the cards in all of this. But this is at the pleading stage. So I'm curious here. The appellants have an expert that opines that the claim for California income tax was ascertainable to a reasonable certainty at the time of Mr. Nafee's death. And the appellant included that expert opinion in the complaint. Why isn't that enough to just get past the pleading stage? I'd say a few things. First of all, this is not a 12B6 type 12C motion. We never pled 12B6. We never asserted that we were trying to prove failure to state a claim. This is a summary judgment type 12C motion. This is, as the Seventh Circuit called it in Alexander, a customary 12C motion. But in all events, given that those 146 factual statements from the refund claim for the IRS and that expert report come in, that shows that under either standard, the 12B6 or the summary judgment standard, that, in fact, the district court got it right here. And the reason being that the facts illustrate that there was a one-third chance, even if we take the expert at face value, that this claim would never be paid, that $0 would exit the estate. And in that situation, you cannot satisfy the ascertainable with reasonable certainty and will be paid standard. Okay. What about it? And, in fact, what you're really arguing is that it couldn't have been ascertained or we couldn't determine what will be paid until post-events and the regulation was pretty clear that we could consider then post-events to determine this amount. Right. Isn't that your argument? That's absolutely right. So we're really not suggesting that the government has all the cards or that the government is somehow in charge. We're saying looking at the regulations as they are, you have to determine whether it's ascertainable at the time, what will be paid, or whether you can wait until a post-event will tell you which happened in this particular case, which is what the district judge said. Isn't that what your argument is? Absolutely. And that's completely consistent with the Supreme Court case law that we saw at Hensley Humes' estate of Sternberger, where, you know, they looked at the date of death and said, you know, in this instance, the amount that's going to exit the estate and go to the charity is not ascertainable, is not reasonably ascertainable. But because the regulation has that post-death relief included, you have this degree of equity that the Court acknowledged it could not grant in the charitable deduction cases, but the IRS grants it through this regulation. Can you respond to Appellant's argument on Shapiro? Well, Shapiro never even cited the regulation. So I'm not entirely certain why my opponent argues that it made some sort of definitive ruling on the regulation. In fact, it doesn't cite 2053a at all. It was actually largely dealing with 2053c, which had to do with lack of consideration. Ultimately, it remanded and said you need to decide, determine, district court, whether there actually was adequate consideration. There also would need to be evaluation. And while there's some language in there regarding looking at the date of death, there's no way that that's inconsistent with what this Court did in Probstra. And when Probstra said look at the date of death and determine whether it was certain, if it was sufficiently certain, then that's the end of the question, even if ultimately that's not the amount that was paid. Is there anything in this case that requires publication or would be helpful for publication? For publication? Well, in terms of that obviously it is there, you know, that, I mean, we publish for a couple of reasons. Sometimes if there isn't an answer that nothing, you know, something has never been interpreted. But then there's also reasons to publish that sometimes facts specific give what I would call district courts like a high and a low watermark, you know, in terms of to say, okay, my case is more like this case or my case is more like that case when they confront, you know, how to apply a statutory scheme to particular factual predicates. The biggest benefit I would see from publication in this case is that there has been argument made not only by my opponent but people in other cases stating that the language in Probstra was dicta and getting a published opinion saying, you know, that's actually the way the regulation works and that's the official ruling of the Ninth Circuit would be helpful to avoiding the future arguments that the Probstra interpretation of the regulation was dicta. The biggest reason not to publish is just that the regulation has changed. There are some other cases in the pipeline that deal with this regulation, but at some point the cases in the future are going to be dealing with the 2009 version of the regulation. Would it also help to publish to determine whether Shapiro applies or doesn't apply under these facts? Well, certainly I think it would help to clarify what really happened in Shapiro, which was a remand for consideration of questions that would include the question as to the amount, if any, for the proposed deduction. And it would make clear that, unlike what my opponent has argued, that what really happened is that no one at that point had actually addressed the question of whether this claim was sufficiently certain to be allowable as a deduction at the date of death. And in the alternative, that perhaps it should have gotten the post-death relief. Well, wasn't the estate's position at the time of death that the estate owed nothing, that they worked very hard to develop a tax avoidance scheme to come up with that conclusion? Absolutely. And if you look at the experts' report, they acknowledge how hard the estate had worked at this and that this was complicated tax law. This is on ER-129, complicated tax law, that they had raised substantial defenses that they had had designed by a law firm, O'Malbany & Meyer, and that they had raised substantial defenses in front of the FTB. And that's why the expert report here actually concludes that there was a reasonable chance of success on the merits that there would be zero taxes paid. And, you know, I think that, as I said, this case doesn't really go to the outer limits or address the outer limits of the regulation because under the facts as asserted here, there was such a substantial chance of zero payment or, obviously, of an intermediate settlement that it could not have determined on the date of death with any reasonable certainty the amount that would be paid. Well, you wouldn't characterize this as, like, collusive or frivolous in terms of... I mean, obviously, it was disputed and it came to a resolution, but it wasn't... I mean, sometimes you get cases with tax protesters or you get these elaborate schemes that people set up that probably a kindergartner would know that they weren't going to be successful. I mean, this is not that type of case, right? Right. This is not the sort of case where the defense to the tax claim was so insubstantial that you could just discount it. This was an attempt at tax avoidance rather than tax evasion. We would agree with that, Your Honor. We would definitely agree with that. And for all the reasons that we've just stated and as stated in our brief, we urge you to affirm. Thank you. Thank you. First, as to Shapiro's bearing on this issue, the Shapiro case cites 2053 1B3, and that's because the government made the same arguments there as to the enforceability and will-be-paid nature of the claim as it does here. Hofstra, in footnote 14, addresses the will-be-paid part language and suggests that that's really designed to address where a creditor waives payment or is not going to enforce payment. Obviously, with the State of California seeking $61 million, it was going to enforce payment. Finally, the government's attempt to construe this as a summary judgment motion is mistaken. There was no opportunity here to develop the facts of this case. This was submitted on the pleadings, and the disputed the pleadings, construed favorably to the plaintiff, raises a material issue of disputed fact as to what the value of this claim is. And the district court, in ruling on that, part of what he said was he went outside the facts that were pleaded because he said, well, maybe this claim wouldn't be enforced. I don't know if this claim wouldn't be enforced. And onto the will-be-paid, he really sort of says, I don't know what the amount is that will be paid. But that's not the question. The question is not will this value be paid. The question is will the claim be paid. And there's no facts here that one can say without a material issue of dispute that the claim would not be paid. Thank you. So you say it's significant that it's at the pleading stage? Yes, Your Honor. All right. Thank you both. This matter will stand submitted. You both made very helpful arguments to the court, and we appreciate the quality of both of your advocacy. Thank you.
judges: Alarcon, Callahan, Smith